# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

|  |  |  |
|---|---|---|
| | : | |
| EDWARD TORRES, | : | |
| *Plaintiff*, | : | |
| | : | PRISONER |
| v. | : | Case No. 3:03cv2227 (MRK)(WIG) |
| | : | |
| JUDITH HOWELL, et al., | : | |
| *Defendants*. | : | |
| | : | |

## RULING AND ORDER

In this *pro se* civil rights action, Plaintiff Edward Torres challenges actions of the Defendants relating to his arrest on May 10, 2001, as well as the conditions of his imprisonment. The named Defendants are Judith Howell, John Doe One, John Doe Two, Victor Savias, Sgt. DiPrimio, Sgt. Edwards, Officer Robinson, Officer Michael Slavin, Darlene Dunbar, Dianne, McKintosh, Jill Kenworthy, Warden Martin, Dan Shaban, William R. Kinloch, Days Inn Motel, Bernard Davis, and Richard K. Smith. On December 7, 2004, the Court dismissed all claims against Defendants Smith, Shaban, and Days Inn Motel. *See* Ruling and Order [doc. #16]. Defendants Slavin, Robinson, Edwards, and DiPrimia, members of the Waterbury, Connecticut, Police Department (the "Police Defendants"), now move to dismiss Mr. Torres's amended complaint. *See* Motion to Dismiss [doc. #50]. Defendants Howell, McKintosh, Kenworthy, Davis, Martin, Dunbar, Savias, Doe One, and Doe Two (the "State Defendants") are officials in the state's Department of Children and Families, Department of Social Services, Department of Public Health, Department of Corrections, or Attorney General's Office. The State Defendants have also filed a motion to dismiss. *See* The State Defendants' Motion to Dismiss [doc. #51]. Also pending before the Court are Mr. Torres's motions

for summary judgment.  *See* Motions for Summary Judgment [docs. ##52 & 53]    For the reasons that follow, Mr. Torres's motions for summary judgment are denied, the Police Defendants' motion to dismiss is granted in part and denied in part, and the State Defendants' motion to dismiss is granted in part and denied in part.

**I.      Mr. Torres's Motions for Summary Judgment**

Rule 56(a) of the District of Connecticut's Local Rules requires that a motion for summary judgment be accompanied by "a document entitled 'Local Rule 56(a)1 Statement,' which sets forth in separately numbered paragraphs meeting the requirements of Local Rule 56(a)3 a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." Rule 56(a)3 requires that each statement in the Rule 56(a)1 Statement "must be followed by a specific citation to (1) the affidavit of a witness competent to testify as to the facts at trial and/or (2) evidence that would be admissible at trial.  The affidavits, deposition testimony, responses to discovery requests, or other documents containing such evidence shall be filed and served" with the Local Rule 56(a)1 Statement.  Rule 56(a)4 also requires a movant to file a memorandum in support of any summary judgment motion. These requirements apply to *pro se* litigants as well as to attorneys.

Mr. Torres has not complied with any of these requirements.  Thus, his motions for summary judgment are denied without prejudice to renewal once he complies with the requirements of Local Rule 56.  However, the Court will consider Mr. Torres's motions as further opposition to the pending motions to dismiss.

## II.   Standard of Review

When considering a Rule 12(b) motion to dismiss, the Court accepts as true all factual allegations in the complaint and draws inferences from these allegations in the light most favorable to the plaintiff.  *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Flores v. Southern Peru Copper Corp.*, 343 F.3d 140, 143 (2d Cir. 2003).  As both the United States Supreme Court and the Second Circuit have repeatedly emphasized, a district court should not dismiss a complaint unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654 (1999); *Sweet v. Sheahan*, 235 F.3d 80, 83 (2d Cir. 2000).  "'[T]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'"  *York v. Ass'n of Bar of City of New York*, 286 F.3d 122, 125 (2d Cir.) (quoting *Scheuer*, 416 U.S. at 236), *cert. denied*, 537 U.S. 1089 (2002).  In other words, "'the office of a motion to dismiss is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'"  *Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co. of New York*, 375 F.3d 168, 176 (2d Cir. 2004) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)).  Furthermore, a court must read a *pro se* plaintiff's pleadings "liberally and interpret them to raise the strongest arguments that they suggest."  *Jorgensen v. Epic/Sony Records*, 351 F.3d 46, 50 (2d Cir. 2003) (internal quotation marks omitted).  That said, "[c]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss" from being granted.  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002) (internal quotation marks and citation omitted); *see Easterling v. Connecticut*, 356 F. Supp. 2d 103, 106 (D. Conn. 2005) ("The fact that a plaintiff is proceeding pro se does not relieve her of the obligation to

allege sufficient facts upon which a legal claim could be based.").

### III.    Facts

The Court takes the following facts from Mr. Torres's amended complaint [doc. #11] and the exhibits attached to both his original [doc. #1] and amended complaints.  *See Levy v. Southbrook Int'l Invs., Ltd.*, 263 F.3d 10, 13 n.3 (2d Cir. 2001) ("On a motion to dismiss, the court may consider any written instrument attached  to [the  complaint] as an exhibit or any statements or documents incorporated in it by reference." (internal quotation marks omitted and alteration in original)).

### A.    Mr. Torres's Arrest

According to a police report attached to Mr. Torres's complaint, on May 10, 2001, Waterbury police officers responded to a disturbance at 868 Baldwin Street in Waterbury.  Two women were arguing over an apartment, allegedly rented to each of them by Mr. Torres.  Initially, Mr. Torres told the police officers that he owned the building, but later he admitted that the owner had vacated the premises.  The police officers noted that the building was in poor condition.  The police officers entered a smashed door after observing lights inside.  The mother of Mr. Torres's children told the police that the family had lived in this apartment since June 2000.  The report states that the apartment was infested with roaches and that the floors were covered with trash, dirt, and feces.  The appliances did not appear to be in working order, and the door was hanging off the refrigerator. There was no edible food in the apartment.  Mr. Torres's four children were sleeping on mattresses with no bedding.  The report describes the children as filthy and wearing only underwear.  Exposed electrical wires, easily accessible to the children, were hanging from the walls.  The police arrested

Mr. Torres and the children's mother on four counts of risk of injury to a minor.  The children were checked at a local hospital for any health issues and then placed in the custody of the Connecticut Department of Children and Families ("DCF").  *See* Complaint [doc. #1] Ex. 14 (Police Incident Report).

Mr. Torres disagrees with the characterization of the apartment in the police report.  He also states that against the advice of his attorney, he pled guilty to the charge of risk of injury to a minor and was sentenced to three years in jail, execution suspended, and three years probation.  *See id.* Ex. 48-K.  A document attached to his original complaint indicates that Mr. Torres was convicted of or pled guilty to three charges of risk of injury to a minor, a probation violation, and criminal trespass in the second degree, but was acquitted of first-degree sexual assault, first-degree burglary, first-degree unlawful restraint, second-degree threatening, and failure to comply with fingerprint requirements.  *See id.* Ex. 74 at 8.

### B.      Child Custody and Support Proceedings

Following removal of Mr. Torres's children from the Baldwin Street apartment, DCF began child neglect proceedings against Mr. Torres and the children's mother.  Each parent was provided a list of steps to take to regain custody.  After a hearing in August 2002, DCF returned the children to their mother.  *See id.* Ex. 21.  Mr. Torres alleges in conclusory fashion that one of his daughters was sexually molested by her mother's boyfriend.  He claims that DCF knew that the man had a history of sexual assault but nevertheless permitted his children to be with the man.

At or around the same time, the Connecticut Department of Social Services instituted a paternity action in Connecticut Superior Court to enable the State to obtain child support from Mr.

5

Torres.  Defendant Davis represented the State in the paternity action.

Defendant Kinloch, an attorney, was appointed by the State court to represent Mr. Torres regarding child neglect and child custody issues.  In November 2001, Defendant Kinloch contacted DCF to obtain child visitation privileges for Mr. Torres.  Defendant Kenworthy of DCF informed Defendant Kinloch that the children did not want to visit their father at this time.  She also stated that the issue was being addressed during counseling sessions and that DCF would consider the recommendations of each child's therapist.  *See id.* Exs. 22-23 (Letters).

At the time of the child custody hearing, Mr. Torres was incarcerated – presumably on the risk-of-injury charges, *see id.* Ex. 74 at 1, though the record is far from clear on that point. Defendant Kinloch represented Mr. Torres at the child custody hearing.  Mr. Torres did not object to the children being returned to their mother and was assured by the court that he could seek visitation rights upon his release from prison.  Although Mr. Torres requested a copy of DCF records in the case, Defendant Kinloch did not provide him a copy because Mr. Torres refused to sign an affidavit acknowledging that he could be fined or imprisoned if he revealed the contents of the file. The court noted its approval of Defendant Kinloch's action at the August 2002 hearing.  *See id.* Ex. 21 at 6-7 (Transcript of Court Proceeding).

### C.     Mr. Torres's Incarceration

Following his May 10, 2001, arrest, Mr. Torres was found guilty of violating probation and sentenced to a term of imprisonment. Based, in part, on charges for which he was arrested, but not convicted, Mr. Torres was assigned a sexual treatment level of 3.  This score caused him to be housed in a higher security facility and to be denied parole and halfway house placement.  Mr. Torres

asserts that despite numerous requests, correctional officials refused to reduce Mr. Torres's sexual treatment level.  Mr. Torres also was confined in segregated housing for seven days, and he experienced difficulty obtaining dental treatment.  Because Mr. Torres did not meet the institutional definition of indigency, he also was not provided free envelopes.

## IV.    Discussion

### A.    Claims Against the Police Defendants

Mr. Torres alleges generally that all of the Police Defendants conspired to separate him from his family.  He brings his conspiracy claims under 42 U.S.C. §§ 1983 and 1985.  He also asserts what the Court construes as Section 1983 false arrest or malicious prosecution claims against the Police Defendants. As described below, the Court dismisses without prejudice Mr. Torres's conspiracy claims against the Police Defendants but does not dismiss his false arrest and malicious prosecution claims.

### 1.    Section 1985 Conspiracy

Mr. Torres states that he brings his claims of conspiracy pursuant to 42 U.S.C. § 1985, though he does not identify which subsection of Section 1985 was violated.  Section 1985(1) prohibits conspiracies to prevent federal officials from performing their duties, and Section 1985(2) prohibits conspiracies intending to deter witnesses from participating in state or federal judicial proceedings.  Since Mr. Torres is not a federal official, and his claims are not related to the participation of witnesses in judicial proceedings, the first two subsections of 42 U.S.C. § 1985 are not relevant to this action.

Section 1985(3) prohibits conspiracies to deprive persons of the equal protection of the laws. In order to state a claim under this provision, a plaintiff must allege:

> "'(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection of the laws, or of equal privileges and immunities under the laws; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right of a citizen of the United States.'"

*Sullivan v.* Stein, 03CV1203, 2004 WL 1179351, at *3 (D. Conn. May 21, 2004) (quoting *Brown v. City of Oneonta, New York*, 221 F.3d 329, 341 (2d Cir.2000) (quoting *Mian v. Donaldson, Lufkin & Jenrette Secs., Inc.* 7 F.3d 1085, 1087 (2d Cir.1993)). Furthermore, the conspiracy must be motivated by "some racial or perhaps otherwise class based, invidious discriminatory animus." *Palmieri v. Lynch*, 392 F.3d 73, 86 (2d Cir. 2004) (internal quotation marks omitted); *see Sullivan*, 2004 WL 1179351, at *3-*4. Section 1985(3) may not be construed as a "general federal tort law." *Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971). "The conspiracy . . . must aim at a deprivation of the equal enjoyment of rights secured by the law to all." *Id.* at 102.

Mr. Torres pleads no facts suggesting that the purported conspiracy against him was motivated by racial – or otherwise class-based – animus. Thus, he fails to state a claim cognizable under Section 1985(3). *See Sullivan v. Stein*, No. 03 CV 1203, 2005 WL 977069, at *2-*3 (D. Conn. Apr. 19, 2005) (dismissing plaintiffs' Section 1985 claims for failure to plead class-based animus). Accordingly, the Section 1985 claims against the Police Defendants are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)[1] for failure to state a claim upon which relief may be granted. Mr. Torres may move this Court for permission to file a second amended complaint in

---

[1] Section 1915(e)(2)(B)(ii) authorizes the court to dismiss *sua sponte* at any time allegations made by a plaintiff with *in forma pauperis* status when those allegations fail to state a claim upon which relief may be granted.

order to re-assert his Section 1985 claim, but if he does so, Mr. Torres must allege specific facts from which the existence of racial or other class-based animus can reasonably be inferred.

### 2.    Section 1983 Conspiracy

Mr. Torres also fails to state a claim for conspiracy under 42 U.S.C. § 1983. A claim of conspiracy to violate civil rights requires more than general allegations. *See Gyadu v. Hartford Ins. Co.*, 197 F.3d 590, 591 (2d Cir. 1999) ("[A] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss." (internal quotation marks omitted)); *Conway v. Garvey*, No. 03 Civ. 7958, 2003 WL 22510384, at *3 (S.D.N.Y. Nov. 5, 2003) ("[A] complaint must not rely on 'vague, prolix allegations of a conspiracy' and must allege overt acts . . . ." (quoting *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990))).

Mr. Torres has included no specific allegations in his complaint regarding his conspiracy claim. He merely states in conclusory fashion that all Police Defendants conspired to deprive him of his family. Even though the Court must construe a *pro se* complaint generously, Mr. Torres's conclusory allegations are insufficient to state a claim for conspiracy. Therefore, his Section 1983 claims for conspiracy also are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii). *See Gyadu*, 197 F.3d at 591 (affirming dismissal of *pro se* plaintiff's conspiracy claims as conclusory). If Mr. Torres moves this Court to re-plead his Section 1983 claim in a second amended complaint, he must do more than merely assert in conclusory fashion that a conspiracy took place. Instead, he must plead facts from which the existence of a conspiracy may reasonably be inferred – particularly, an agreement by Defendants, tacit or otherwise, to deprive him of constitutional rights.

### 3.      False Arrest and Malicious Prosecution

Mr. Torres also alleges that the Police Defendants denied him due process because the allegations in the police incident report were false and the Police Defendants entered his apartment without permission and without a warrant in violation of the Fourth Amendment.   The Court construes Mr. Torres's allegations as asserting false arrest and malicious prosecution claims under Section 1983.

"Claims for false arrest or malicious prosecution, brought under [Section] 1983 to vindicate the Fourth and Fourteenth Amendment right to be free from unreasonable seizures, are 'substantially the same' as claims for false arrest or malicious prosecution under state law." *Jocks v. Tavernier*, 316 F.3d 128, 134 (2d Cir. 2003).   Under Connecticut law – and, therefore, under Section 1983 – to state a claim of false arrest the plaintiff must allege that the prosecution terminated in his favor. *See Roesch v. Otarola*, 980 F.2d 850, 853-54 (2d Cir. 1992) (holding that under Connecticut law, a false arrest plaintiff must show that the charges terminated favorably).[2]  Similarly, "[t]o prevail on a claim of malicious prosecution, a plaintiff must prove that . . . 'the criminal proceedings have terminated'" in his favor.  *Heussner v. Day, Berry & Howard, LLP*, 94 Conn. App. 569, 577 (2006) (quoting *McHale v. W.B.S. Corp.*, 187 Conn. 444, 447 (1982)).  "'Proceedings are terminated in favor of the accused only when their final disposition is such as to indicate the accused is not

---

[2]  The Court notes that *Roesch*'s assessment of Connecticut false arrest law has been questioned.  *See, e.g.*, *Weyant v. Okst*, 101 F.3d 845, (2d Cir. 1996) (noting that "Connecticut law is less clearly settled" than New York law as to whether a favorable termination is required for a false arrest claim); *Holman v. Cascio*, 390 F. Supp. 2d 120, 125-26 (D. Conn. 2005) (noting courts that have questioned *Roesch*'s holding).  However, absent controlling authority to the contrary, the Court follows *Roesch*.  *See Whitehorn v. Bridgeport Police Dep't*, 3-CV-1240, 2004 WL 1576706, at *3 (D. Conn. July 8, 2004) (observing that courts have questioned *Roesch*'s statement of Connecticut false arrest law, but nevertheless following *Roesch*); *see also Harrison v. McMahon*, 2-CV-477, 2004 WL 1171391, at *6 (D. Conn. May 24, 2004) (following *Roesch*).

guilty.'" *Figueroa v. Kroll*, No. 98 CV 0837, 2004 WL 2924492, at *7 (S.D.N.Y. Dec. 16, 2004)

(quoting *Singleton v. City of New York*, 632 F.2d 185, 193 (2d Cir. 1980)).  A plaintiff may satisfy

this element by showing "that he 'was discharged without a trial under circumstances amounting to

the abandonment of the prosecution without request by him or arrangement with him.'"  *White v.*

*Wortz*, 66 F. Supp. 2d 331, 334 (D. Conn. 1999) (quoting *See v. Gosselin*, 133 Conn. 158, 160

(1946)); *see also Russo v. City of Hartford*, 184 F. Supp. 2d 169, 186 (D. Conn. 2002) ("[S]o long

as the prior action terminated without *any* adjudication against, or settlement requiring consideration

from, the . . . plaintiff, the Connecticut Supreme Court deems the termination prong satisfied."

(emphasis added)).

When a charge is dismissed as part of a plea bargain, the dropped charge cannot serve as the

basis of a false arrest or malicious prosecution claim.  *See  Posr v. Court Officer Shield # 207*, 180

F.3d 409, 418 (2d Cir.1999) ("[I]f the outcome was the result of a compromise to which the accused

agreed, or an act of mercy requested or accepted by the accused, . . . it is not a termination in favor

of the accused for purposes of a malicious prosecution claim." (internal quotation marks and citation

omitted)); *DeLaurentis v. City of New Haven*, 220 Conn. 225, 250-51 (1991) (explaining that

"favorable termination" in the criminal context means that the charge "was abandoned or withdrawn

without consideration, that is, withdrawn without . . . a plea bargain").  But conviction on one charge

does not automatically foreclose the possibility of a malicious prosecution or false arrest claim based

on a different charge, provided that the two are distinct offenses.  *See Fulton v. Robinson*, 289 F.3d

188, 197 (2d Cir. 2002) ("[A]n accused arrested on multiple charges but convicted on only one may

proceed with a claim for malicious prosecution on the charge on which he was not convicted . . . .")

*Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989) (holding that where two charges involve different

elements, conviction on one charge does not preclude a malicious prosecution claim based on the other charge).  A document attached to the original complaint indicates that Mr. Torres pled guilty to, or was convicted of, several charges (three charges of risk of injury to a minor, a probation violation, and criminal trespass in the second degree) and was acquitted of several others (first-degree sexual assault, first-degree burglary, first-degree unlawful restraint, second-degree threatening, and failure to comply with fingerprint requirements).  Yet Mr. Torres says that he pled guilty to the risk-of-injury charges as part of a deal involving a sentence of three years probation.  Thus, it is not possible at present to determine whether certain charges against Mr. Torres were abandoned as part of a plea agreement, or whether they were dropped for other reasons.  To the extent that Mr. Torres's false arrest/malicious prosecution claims are founded on charges to which he pled guilty, the claims are dismissed.  However, the Court cannot completely dismiss Mr. Torres's false arrest/malicious prosecution claim because of the presence of other charges to which Mr. Torres apparently did not plead guilty. Consequently, the Court denies the Police Defendants' motion to dismiss Mr. Torres's false arrest and malicious prosecution claims in their entirety.  The Police Defendants are free to renew their arguments at the summary judgment stage and to submit evidence as to how the criminal charges against Mr. Torres were resolved.

**B.      Claims Against the State Defendants**

Mr. Torres asserts claims against the State Defendants in their official and individual capacities.  As a threshold matter, the State Defendants argue that all claims for damages against them in their official capacities are barred by the Eleventh Amendment.  The Eleventh Amendment protects from damages suits state officials sued in their official capacity.  A suit against a defendant

in his official capacity is ultimately a suit against the state if any recovery would be expended from the public treasury.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101 n.11 (1984).

Because Mr. Torres's official capacity claims for damages are not cognizable under the Eleventh Amendment, the Court grants the State Defendants' motions to dismiss the official capacity claims against them.  *See Gilhooly v. Armstrong*, No. 03 CV 1798, 2006 WL 322473, at *2 (D. Conn. Feb. 9, 2006).  The Court considers next the claims against the State Defendants in their individual capacities.


### 1.    Section 1985 Conspiracy

Mr. Torres states that he brings claims of conspiracy against the State Defendants under 42 U.S.C. § 1985.  He does not identify which subsection was violated.  The State Defendants argue that no subsection is applicable to the claims in Mr. Torres's amended complaint.  As explained above, the first two subsections of 42 U.S.C. § 1985 are not relevant to this action.    Also as explained above, Section 1985(3) requires that the conspiracy be motivated by race or perhaps other class-based animus.  Mr. Torres alleges no facts suggesting that the alleged conspiracies against him were motivated by racial or other class-based animus.  Thus, he fails to state a claim cognizable under section 1985.  Accordingly, the Court grants the State Defendants' motion to dismiss without prejudice as to the Section 1985 claims.


### 2.    Section 1983 Conspiracy

The State Defendants do not consider whether Mr. Torres's conspiracy claims are cognizable under Section 1983.  After careful review, the Court concludes that they are not.  Mr. Torres has

included no specific allegations in his original or amended complaint regarding his conspiracy claim. His conspiracy claims against the State Defendants are as conclusory as his conspiracy claims against the Police Defendants. Such allegations are insufficient to state a claim for conspiracy. All Section 1983 claims for conspiracy are dismissed without prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim upon which relief may be granted. Any attempt by Mr. Torres to re-plead his conspiracy claims against the State Defendants must be responsive to the concerns outlined above.

### 3. Claims Based on the Alleged Molestation of Mr. Torres's Child

Mr. Torres alleges that Defendants McKintosh and Kenworthy, DCF social workers, were responsible for the sexual molestation of his daughter because they were aware that the child's mother was having a relationship with a man previously charged with sexual assault on two occasions, yet they permitted his daughter to remain in the home with that man. The State Defendants contend that Mr. Torres lacks standing to assert claims on behalf of his children, and that any claims by Mr. Torres for interference with the parent-child relationship based on this allegation are not cognizable under Section 1983.

A plaintiff has standing to bring an action in federal court only if the conduct of the defendants has caused the plaintiff personally to suffer an injury in fact. *See DaimlerChrysler Corp. v. Cuno*, ___ U.S. ____, 2006 WL 1310731, at *7 (2006); *Lujan v. Defenders of Wildlife*, 505 U.S. 555, 560-61 (1992); *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471-72 (1982). Mr. Torres's children are not plaintiffs in this case, and he sues on his own behalf for his own direct injuries, not on behalf of his children. However, Mr.

Torres cannot bring Section 1983 claims that are based on a violation of the constitutional rights of others. *See Kelly v. Rockefeller*, 69 Fed. Appx. 414, 416 (10th Cir. 2003) ("A civil rights action must be based on the violation of plaintiff's personal rights, and not the rights of someone else." (internal quotation marks omitted)); *Meador v. Cabinet for Human Res.*, Nos. 88-5613, 88-5614, 1988 WL 108185, at *1 (6th Cir. 1988) ("[Plaintiff] has no right to sue on his own behalf for the deprivation of the civil rights of his children."); *Morgan v. City of New York*, 166 F. Supp. 2d 817, 819 (S.D.N.Y. 2001) ("[Plaintiff] lacks standing to bring individual claims under [Section] 1983 based upon a deprivation of her daughter's constitutional rights."); *cf. Kelly*, 69 Fed. Appx. at 416 ("[A] child lack[s] standing to bring a civil rights claim based on the alleged violation of his father's constitutional rights . . . ."). Therefore, the Court grants the State Defendants' motion to dismiss claims that are based on a violation of the rights of Mr. Torres's children.

Parents have a constitutionally protected right to raise their children, and it may be that Mr. Torres seeks to invoke this right. *See, e.g.*, *Troxel v. Granville,* 530 U.S. 57, 65,(2000)*; Hodgson v. Minnesota*, 497 U.S. 417, 484 (1990); *Bd. of Directors of Rotary Int'l v, Rotary Club of Duarte*, 481 U.S. 537, 545 (1987). The Second Circuit has not addressed whether state action that has an incidental effect on the parent-child relationship is sufficient to make out a Section 1983 claim on behalf of a parent. The vast majority of circuits considering the issue, however, have "expressly declined to find a violation of the familial liberty interest where the state action at issue was not aimed specifically at interfering with the relationship." *Russ v. Watts*, 414 F.3d 783, 787-88 (7th Cir. 2005) (citing cases). The Court agrees and concludes that there is no constitutional harm to a plaintiff's parental rights cognizable under Section 1983 unless the parent-child relationship itself has been targeted. *See McCurdy v. Dodd*, 352 F.3d 820, 830 (3d Cir. 2003) ("It would . . . stretch

the concept of due process too far if we were to recognize a constitutional violation based on official actions that were not directed at the parent-child relationship.").

In alleging that Defendants McIntosh and Kenworthy allowed his children to live with their mother and a man previously charged with sexual assault, Mr. Torres has not alleged that his relationship with his children was targeted for interference.  He has not alleged facts suggesting that these actions of Defendants McKintosh and Kenworthy were directed toward the relationship.  *See Walsh v. Erie County Dep't of Job and Family Servs.*, 240 F. Supp. 2d 731, 737 (N.D. Ohio 2003) (holding that parents did not have a "cognizable claim for interference with the parent-child relationship because the defendants' conduct was not directed specifically toward disruption of the family relationship"); *Baynard v. Lawson*, 76 F. Supp. 2d 688, 694 (E.D. Va. 1999) (holding that parents did not have a cause of action under Section 1983 for damage to the parent-child relationship where their child was sexually molested by a teacher); *Divergilio v. Skiba*, 919 F. Supp. 265, 269 (E.D. Mich. 1996) (holding that parents failed to state a claim under Section 1983 for deprivation of their parent-child relationship where the teacher exposed himself to their child).  Mr. Torres's claims against these defendants appear to be more in the nature of a negligence claim for allowing the children to reside with an individual who had previously been charged with sexual assault.  Section 1983 is not a federal tort claim, and in absence of an alleged constitutional or federal statutory violation, Section 1983 provides no relief.  *See Almand v. DeKalb County*, 103 F.3d 1510, 1513 (11th Cir. 1997) (noting that courts should "vigilantly safeguard against converting section 1983 into a font of tort law to be superimposed upon whatever systems may already be administered by the States" (internal quotation marks omitted)).

Accordingly, the Court grants the State Defendants' motion to dismiss Mr. Torres's claims

under Section 1983 for allegedly interfering with his parent-child relationship. In dismissing Mr. Torres's claim, the Court echoes a remark by the District Court in *Baynard*: "[T]he Court does not minimize the harm that their family has suffered nor belittle the fundamental liberty interest in the parent-child relationship. The Court's holding simply indicates that, in light of the Supreme Court and . . . Circuit precedent, it would be inappropriate to recognize Plaintiffs' claim for injury to the parent-child relationship on the facts [alleged]."  76 F. Supp. 2d at  695.

### 4.   Claims Based on the Child Support Proceedings

Defendant Howell, a social worker at the Connecticut Department of Social Services, instituted child-support proceedings against Mr. Torres on behalf of the State.  Defendant Davis is the Assistant Attorney General who represented the State in those proceedings.  Mr. Torres alleges that Defendant Davis failed to comply with a subpoena and should have terminated the support proceedings because Mr. Torres did support his family.  He alleges that Defendant Howell failed to conduct a proper investigation before commencing the child support proceedings.  The State Defendants move to dismiss all claims against Defendants Howell and Davis because Mr. Torres has not alleged that either Defendant deprived him of a constitutionally protected right.

Mr. Torres concedes that he is the father of the four children and, therefore, acknowledges that he is responsible for their support.  However, he argues that he did provide support, contrary to the claims in the child support proceeding.  Mr. Torres does not allege that he was required to make any additional payments as a result of the proceeding.  The Court can discern no constitutional right that was violated or any injury suffered by Mr. Torres as a result of the commencement of the paternity and support proceedings.  To the extent that Mr. Torres's allegations might be construed

as a malicious prosecution claim, such a claim would be foreclosed by the favorable termination requirement described above. Therefore, the State Defendants' motion to dismiss is granted as to the claims against Defendants Howell and Davis. The Court does not consider whether Mr. Torres's claims against Defendant Davis would have to be dismissed under the additional ground that Mr. Davis – as the Assistant Attorney General who represented the State in the child-support proceedings – was absolutely immune for acting as a prosecutor in that matter. *See Mangiafico v. Blumenthal*, 358 F. Supp. 2d 6, 14 (D. Conn. 2005) (noting that prosecutors are absolutely immune from suit under Section 1983 for initiating prosecutions).

### 5.    Supervisory Claims Against Defendant Dunbar

Defendant Dunbar was the Commissioner of the Department of Children and Families during the time relevant to Mr. Torres's claims. Mr. Torres alleges that Ms. Dunbar failed to take action in response to his letters. The Court considers the claim against Defendant Dunbar under a theory of supervisory liability.

Section 1983 imposes liability only on the official causing the violation. "A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort." *Leonard v. Poe*, 282 F.3d 123, 140 (2d Cir. 2002). Thus, the doctrine of respondeat superior is inapplicable in Section 1983 cases. *See Blyden v. Mancusi*, 186 F.3d 252, 264 (2d Cir. 1999); *Prince v. Edwards*, No. 99 Civ. 8650(DC), 2000 WL 633382, at *6 (S.D.N.Y. May 17, 2000) ("Liability may not be premised on the respondeat superior or vicarious liability doctrines, . . . nor may a defendant be liable merely by his connection to the events through links in the chain of command." (internal quotations and citation omitted)).

18

> [A] supervisor may be found liable for his deliberate indifference to
> the rights of others by his failure to act on information indicating
> unconstitutional acts were occurring or for his gross negligence in
> failing to supervise his subordinates who commit such wrongful acts,
> provided that the plaintiff can show an affirmative causal link
> between the supervisor's inaction and [his] injury.

*Leonard*, 282 F.3d at 140.

The only allegation regarding Defendant Dunbar is that Mr. Torres wrote her a letter.  He does not state when he wrote the letter or describe its contents.  Although he states in the amended complaint that he attached a copy of the letter as Exhibit 142, no exhibit bearing this number and no copy of a letter to Defendant Dunbar is attached to the original or amended complaint.

Other Judges in this District have held that sending a letter to the Commissioner of the Department of Children and Families requesting a hearing on charges of child abuse is insufficient in and of itself to demonstrate the Commissioner's personal involvement where the Commissioner was not involved in the scheduling or conduct of the hearing.  *See, e.g.*, *Carroll v. Ragaglia*, 292 F. Supp. 2d 324, 336 (D. Conn. 2003) (rejecting a Section 1983 claim against the DCF Commissioner where the plaintiff had written to her and left phone messages for her), *aff'd in part and rev'd in part on other grounds*, 109 Fed. Appx. 459 (2d Cir. 2004).  Analogously, courts within the Second Circuit have held that mere receipt of a letter from an inmate is insufficient to impute personal involvement to the correctional official to whom the letter was addressed.  *See, e.g.*, *Johnson v. Goord*, No. 01 Civ. 9587PKC, 2004 WL 2199500, at *7 (S.D.N.Y. Sept. 29, 2004) (citing cases); *Burgess v. Morse*, 259 F. Supp. 2d 240, 248 (W.D.N.Y. 2003) ("[T]he fact that an official ignored a letter alleging unconstitutional conduct is not enough to establish personal involvement.") (internal quotation marks omitted and alteration in original).  Even if Mr. Torres did write a letter to

Defendant Dunbar, the Court concludes that he has alleged no facts suggesting an affirmative causal link between that letter and any injury suffered.  Nor has he alleged sufficient personal involvement by Defendant Dunbar in any alleged constitutional violations.  Therefore, Mr. Torres's claims against Defendant Dunbar are dismissed without prejudice.  If Mr. Torres seeks to re-assert these claims in a second amended complaint, he must allege specific facts from which Defendant Dunbar's personal involvement in a constitutional violation can reasonably be inferred.

### 6.    Claims Arising from the Child Neglect Proceedings

Mr. Torres alleges that the DCF social workers, Defendants McKintosh and Kenworthy, fabricated evidence, defamed him, and commenced child neglect proceedings without a proper investigation of his family circumstances, all in order to deprive him of his children.  The State Defendants argue that they are protected by qualified immunity with regard to the initial decision to remove the children from their parents and absolute immunity with regard to their participation in the court proceedings.

### a.    Removal of Children

Other Judges in this District have held that child protective workers are entitled only to qualified immunity with regard to "[t]he investigation of charges of child abuse and the removal of a child from its parents' custody." *Carroll*, 292 F. Supp. 2d at 335 (citations omitted).  This Court agrees with those decisions.  The doctrine of qualified immunity "shields government officials from liability for damages on account of their performance of discretionary official functions 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a

reasonable person would have known.'" *Rodriguez v. Phillips*, 66 F.3d 470, 475 (2d Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

To determine whether qualified immunity is warranted, the Court first must address the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

> [I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established. This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition.

*Id.* Mr. Torres alleges that Defendants McKintosh and Kenworthy violated his Fourteenth Amendment rights by fabricating allegations and evidence against him and by removing his children without conducting a proper investigation. The Court must determine whether he has alleged a valid claim of the denial of due process.

The Second Circuit has held that social workers must have a reasonable basis for believing that removal is necessary for a child's well-being before they can remove a child from a parent's custody. *See Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (holding that social workers cannot remove children without court authorization or consent of the parents absent emergency conditions); *cf. Robison v. Via*, 821 F.2d 913, 921-22 (2d Cir. 1987) (holding that where "a child is immediately threatened with harm or is bereft of adequate care or supervision," sufficient emergency exists for removal of child without court order or parental consent). Mr. Torres alleges that Defendants McKintosh and Kenworthy removed his children despite a lack of any evidence to suggest that doing so would be appropriate. Moreover, he alleges that Defendants McKintosh and

Kenworthy fabricated reports to facilitate their actions.  Therefore, Mr. Torres's allegations are sufficient to state a violation of a clearly established constitutional right.

Defendants respond that the police report attached to Mr. Torres's complaint – which described the squalid conditions in which Mr. Torres's children were found – confirms that their actions were reasonable and thus entitled to qualified immunity.  The Court does not doubt that if the report is accurate, Defendants are indeed entitled to qualified immunity.  But Mr. Torres vehemently denies that the report is accurate and further alleges that Defendants McKintosh and Kenworthy exaggerated and lied about the conditions in which his family lived.  Assuming, as the Court must at this stage, that Mr. Torres is correct that the conditions in which the children lived were not as described in the police report, the Court is unable to conclude at this stage that Defendants McKintosh and Kenworthy are entitled to qualified immunity.  Therefore, the State Defendants' motion to dismiss is denied with respect to Defendants McKintosh and Kenworthy's removal of Mr. Torres's children.

### b.    Initiation of Child Custody Proceedings

The Second Circuit has not yet determined whether DCF social workers are protected by absolute immunity with regard to their participation in child custody proceedings.  However, several other circuits have concluded that child welfare organizations and their workers enjoy absolute immunity for initiating judicial child custody proceedings.  For instance, the Third Circuit granted absolute immunity to child welfare workers "for their actions on behalf of the state in preparing for, initiating, and prosecuting dependency proceedings."  *Ernst v. Children & Youth Servs. of Chester County*, 108 F.3d 486, 495 (3d Cir. 1997).  The court rested its decision on the following

considerations: "(1) the functions performed by the [child services] defendants in dependency proceedings are closely analogous to the functions performed by prosecutors in criminal proceedings; (2) the public policy considerations that countenance immunity for prosecutors are applicable to child welfare workers performing these functions; and (3) dependency proceedings incorporate important safeguards that protect citizens from unconstitutional actions by child welfare workers." *Id.* Other circuits have reached similar conclusions. *See, e.g.*, *Thompson v. SCAN Volunteer Services*, 85 F.3d 1365, 1373 (8th Cir. 1996) (granting absolute immunity to child welfare worker for the initiation of and testifying at child welfare proceedings); *Milpaugh v. County Dep't of Pub. Welfare*, 937 F.2d 1172 (7th Cir. 1991) ("[S]ocial workers and like public officials are entitled to absolute immunity in child custody cases on account of testimony and other steps taken to present the case for decision by the court."); *see also Baca v. City of New York*, No. 00 Civ. 4508, 2003 WL 21638211, at *7 n.6 (S.D.N.Y. July 11, 2003) (noting that the Third, Fourth, Sixth, Seventh, and Ninth Circuits have held child welfare workers immune).

The Court agrees with these decisions and holds that DCF social workers have absolute immunity for their involvement in initiating and participating in judicial child custody proceedings. When doing so, DCF social workers act in the interest of the public by setting in motion adversarial hearings. This function is sufficiently akin to a prosecutor initiating a criminal prosecution, or to an attorney general initiating a civil suit, to warrant total immunity. *See Spear v. Town of West Hartford*, 954 F.2d 63, 66 (2d Cir. 1992) ("[A]gency officials performing certain functions analogous to those of a prosecutor should be able to claim absolute immunity with respect to such acts.'" quoting (*Butz v. Economou*, 438 U.S. 478, 515 (1978))); *Mangiafico v. Blumenthal*, 358 F. Supp. 2d 6, 22 (D. Conn. 2005) ("[I]n determining whether particular actions of government

23

officials fit within a common-law tradition of absolute immunity, or only the more general standard of qualified immunity, [courts] appl[y] a 'functional approach,' which looks to the nature of the function performed, not the identity of the actor who performed it.'" (second and third alterations in original) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993))); *cf. Mangiafico*, 358 F. Supp. 2d at 22-24 (granting absolute immunity to the State Attorney General for his decision not to defend a correction officer in a civil suit). Therefore, the State Defendants' motion to dismiss is granted with respect to all claims against Defendants McKintosh and Kenworthy stemming from their participation in child custody proceedings against Mr. Torres.

### 7.    Claims Involving Public Health Officials

Mr. Torres identifies Defendants Victor Savias, John Doe One, and John Doe Two as employees of the Connecticut Department of Public Health and has provided an address in Hartford, Connecticut, for all three Defendants. Mr. Torres alleges that these Defendants were responsible for his arrest and the removal of his children because they did not provide adequate funds when they arranged for temporary housing for Mr. Torres and his family in June 2000 and did not properly investigate the living conditions or take any action against the owners of the Baldwin Street property.

The State Defendants have moved to dismiss all claims against Defendant Savias because no person by that name has ever been employed by the Connecticut Department of Public Health. In support of their motion, the State Defendants attach an affidavit documenting this fact. When reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*, however, a court may consider only the complaint with attached exhibits and matters of which judicial notice may be taken. The Court cannot take judicial notice of a defendant's affidavit.

*See Anderson v. County of Nassau*, 297 F. Supp. 2d 540, 545 (E.D.N.Y. 2004).  This Court cannot verify whether Defendant Savias is employed by the Connecticut Department of Health or some other agency.  Thus, even though the Court does not question the truth of the affidavit, the Court will not consider it.

However, the Court can discern no basis for a Section 1983 claim against Defendants Savias, Doe One, and Doe Two.  In order to state a claim for relief under Section 1983, Mr. Torres must satisfy a two-part test.  First, he must allege facts demonstrating that the Defendants acted under color of state law.  Second, he must allege facts demonstrating that he has been deprived of a constitutionally or federally protected right.  *See Washington v. County of Rockland*, 373 F.3d 310, 315 (2d Cir. 2004).

In his amended complaint, Mr. Torres alleges that these Defendants denied him due process because they did not provide adequate funds when they arranged for temporary housing for Mr. Torres and his family in June 2000 and did not properly investigate the living conditions or take any action against the owners of the Baldwin Street property.  Research has revealed no cases finding a cognizable Section 1983 claim for failure of Health Department employees to take action against landlords or provide financial assistance.

The Supreme Court has held that the state has no obligation to protect an individual against private violence.  *See DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 196 (1989) (holding that the State's failure to protect a child from sexual abuse did not constitute a violation of the Due Process Clause); *id.* ("[O]ur cases have recognized that the Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."); *see*

*also Theresa T. v. Ragaglia*, 154 F. Supp. 2d 290, 303-04 (D. Conn. 2001) (holding that Connecticut's child protection statutes do not create substantive or procedural due process rights). In light of these cases, the Court concludes that Mr. Torres has failed to state a claim against Defendants Savias, Doe One, and Doe Two.  Accordingly, all claims against these three Defendants are dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 8.      Claims Relating to Mr. Torres's Incarceration

Mr. Torres includes several claims regarding his incarceration.  He alleges that he was improperly classified because correctional officials relied on a charge for which he was arrested but not convicted, denied placement in a halfway house, sent to segregation for seven days even though he was not charged with any disciplinary violations, denied dental assistance, and denied access to the courts.  The State Defendants argue that Mr. Torres has no protected liberty interest in his classification and no right to be housed in any particular facility.  They also contend that Warden Martin, the only Defendant employed by the Connecticut Department of Correction, was not personally involved in the remainder of Mr. Torres's claims relating to his incarceration.

### a.      Classification

"[A] prisoner has a liberty interest only if the deprivation of which he complains is atypical and significant *and* the state has created the interest by statute or regulation." *Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997) (emphasis added).  For an inmate to demonstrate that the due process clause protects his interest in a particular benefit, the inmate must point to a "source for entitlement to protection of that interest in state law or policy." *Anderson v. Recore*, 317 F.3d 194, 200 (2d Cir.

2003).  Thus, where "'Congress has given federal prison officials full discretion to control [the] conditions of confinement,'" federal prisoners have no protected interest in their classification or the privileges that attach to them.  *Handberry v. Thompson*, 436 F.3d 52, 72 (2d Cir. 2006) (quoting *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976)); *see Harris v. Meulemans*, 389 F. Supp. 2d 438, 441 (D. Conn. 2005).  "Similarly, where state prison officials are given discretion in determining inmate classifications, state prisoners do not have any constitutionally protected right to a particular classification." *Harris*, 389 F. Supp. 2d at 441; *see Madewell v. Roberts*, 909 F.2d 1203, 1207 (8th Cir. 1990) ("[Plaintiff] has not pointed to any statute, regulation, or policy statement that sufficiently limits prison officials' discretion so as to create a protected liberty interest in class status.").

An inmate's interest in avoiding a discretionarily assigned classification is thus distinguishable from interests that are protected by the Due Process Clause because protected interests relate to present entitlements.  In *Pugliese v. Nelson*, 617 F.2d 916 (2d Cir. 1980), for instance, the Second Circuit found that plaintiffs had no due process right to avoid their classification as "Central Monitoring Cases," a designation that was likely to "hinder or preclude a prisoner in obtaining social furloughs, work releases, participation in community activities, release to halfway houses and transfers to other correctional institutions." *Id.* at 918.  The Court held that while due process protection attaches to benefits to which an inmate has a present entitlement, such as a prisoner's accumulated good-time credits, it does not attach to a benefit that "depends wholly on the unfettered exercise of discretion by a board or other authority." *Id.* at 922.  As the Court recognized, "[c]onsiderable weight is given to whether the alleged liberty interest is in the nature of 'a bird in the hand' rather than one in the bush." *Id.*  *Compare id.* at 922 (holding that the discretionary classification of inmates did not implicate their due process rights); *Wheway v. Warden*, 215 Conn.

418, 430-32 (1990) (holding that where the Commissioner of Correction retains discretion to classify prisoners to any security level, prison classification programs do not create any liberty interest or any constitutional entitlement to due process); *Santiago v. Comm'r of Corr.*, 39 Conn. App. 674, 680 (1995) (holding that inmates' classification as "security risk group members" did not deprive them of any legally recognized liberty interest because they had no entitlement to the "recreation, school, and work privileges" it cost them), *with Wolff v. McDonnell*, 418 U.S. 539, 558 (1974) (holding that petitioners had a due process right in preserving good-time credits that under state law could only be revoked for good cause); *Torres v. Comm'r of Corr.*, 84 Conn. App. 113, 118 n.2 (2004) (recognizing that a prisoner was entitled to a due process hearing where, "as a result of the classification in the security risk group, the petitioner lost some *previously earned* good time credit" (emphasis added)); *Santiago*, 39 Conn. App. at 682-83 (holding that an inmate's classification implicated his liberty interest where it affected his earned good-time credits).

In Connecticut, an inmate has no protected right to a particular classification level. Instead, "the Commissioner of Correction retains discretionary authority to classify prisoners at any security level." *Harris*, 389 F. Supp. 2d at 441; *see* Conn. Gen. Stat. § 18-81 ("The [C]ommissioner [of Correction] shall be responsible for establishing . . . classification . . . programs throughout the department."). Therefore, the improper classification of inmates in the custody of the Connecticut Department of Correction does not implicate the inmates' due process rights. *See Harris*, 389 F. Supp. 2d at 441; *see also Green v. Armstrong*, No. 3:96cv1127, slip op. at 10 (D. Conn. Feb. 25, 1998), *aff'd*, No. 98-3707 (Aug. 20, 1999) (summary order). As a result, Mr. Torres cannot maintain a Section 1983 claim based on his allegedly improper inmate classification. The Court grants the State Defendants' motion to dismiss any claims regarding Mr. Torres's classification and housing

28

assignments based on that classification.

### b.    Personal Involvement

Mr. Torres also alleges that various correctional officers sent him to segregation, denied him dental care, required him to pay before he could shave, and denied him access to the courts and to free legal envelopes.  These allegations might well state a valid Section 1983 claim, but the problem for Mr. Torres is that he has not alleged any personal involvement in these matters by the only correctional official named as a defendant, Defendant Martin.

Defendant Martin, the warden of one of the correctional facilities in which Mr. Torres was housed, is a supervisory official.  As stated above, a supervisor is not liable under Section 1983 merely because a subordinate violated Mr. Torres's constitutional rights.  Mr. Torres does not allege that Defendant Martin was aware of any of his claims or involved in them in any way.  Although he attaches to the amended complaint several inmate requests directed to Defendant Martin, all of the requests concern Mr. Torres's classification.

Because Mr. Torres fails to allege any facts suggesting that Defendant Martin was aware of the remaining claims, the Court concludes that Mr. Torres has failed to show Defendant Martin's personal involvement.  Accordingly, all claims against Defendant Martin relating to Mr. Torres's incarceration are dismissed without prejudice.  If Mr. Torres wishes to pursue his claims, he must – by way of a motion – either allege specific facts demonstrating an affirmative causal link between any action or inaction by Defendant Martin and his injury, or name another correctional official as a defendant who did have personal involvement in the claims asserted..  *See Leonard*, 282 F.3d at 140.

### 9.    Defendant Kinloch

Mr. Torres also includes in the amended complaint claims against William Kinloch, a private attorney appointed by the court to represent Mr. Torres in the neglect proceedings.  Although service on Defendant Kinloch was returned to the Court unexecuted, the Court *sua sponte* considers the claims against him at this time.

As stated above, to state a claim against Defendant Kinloch, Mr. Torres must allege facts demonstrating that Defendant Kinloch acted under color of state law.  A defendant acts under color of state law when he exercises "some right or privilege created by the State . . . or by a person for whom the State is responsible," and is "a person who may fairly be said to be a state actor."  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982).  Generally, a public employee acts under color of state law when he acts in his official capacity or exercises his responsibilities pursuant to state law.  *See West v. Atkins*, 487 U.S. 42, 50 (1988).

Neither public defenders nor special public defenders are subject to suit under Section 1983 for actions taken in their role as defense counsel.  *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) ("[A] public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding."); *Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) (holding that court-appointed attorneys performing the traditional role of defense counsel do not act under color of state law and thus are not subject to suit under Section 1983).

The exhibits provided by Mr. Torres indicate that Defendant Kinloch is a private attorney appointed by the court to represent Mr. Torres in the child neglect proceedings.  Mr. Torres makes no allegations to the contrary.  The Court concludes that Defendant Kinloch's role was like that of

a special public defender in that he was acting as the State's adversary in the proceedings. Accordingly, Defendant Kinloch was not acting under color of state law.  *See Tower v. Glover*, 467 U.S. 914, 920-22 (1984).  Because the Court has already dismissed as conclusory Mr. Torres's conspiracy claims,[3] this exception does not apply.  Accordingly, the Court will dismiss the claims against Defendant Kinlock.

### 10.    State Law Claims

Although Mr. Torres states in opposition to the motion to dismiss that he has not asserted any state law claims, *see* Memorandum of Law in Opposition [doc. #60] ¶ IV(K), his amended complaint included numerous references to violations of state law, such as defamation, false light invasion of privacy, and violation of the Connecticut Freedom of Information Act.  Supplemental or pendent jurisdiction is a matter of discretion, not of right.  *See First Capital Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 182 (2d Cir. 2004).  Where all federal claims have been dismissed before trial, pendent state claims may be dismissed without prejudice and left for resolution by the state courts. *See* 28 U.S.C. § 1367(c)(3); *Giordano v. City of New York*, 274 F.3d 740, 754 (2d Cir. 2001) (collecting cases).  Because the Court has dismissed all federal law claims against all State Defendants except Defendants McKintosh and Kenworthy, it declines to exercise supplemental jurisdiction over Mr. Torres's state law claims against other State Defendants.  To the extent that Mr.

---

[3] With regard to Defendant Kinloch, Mr. Torres's exhibits demonstrate that Defendant Kinloch was advocating for Mr. Torres, not conspiring against him. Mr. Torres was incarcerated at the time of the custody hearing and chose not to contest the decision returning the children to their mother's custody.  Defendant Kinloch worked with DCF to try to reestablish visitation and custody for Mr. Torres. DCF informed Defendant Kinloch that the children's therapists did not advise visitation at that time and encouraged Mr. Torres to follow the guidance provided and attempt to obtain visitation or custody upon his release from prison.

Torres intends to pursue state law claims against Defendants McKintosh and Kenworthy, he must file an amended complaint that separately states those state law claims that he intends to assert and the basis for them.  In the absence of such an amended complaint, the Court will not consider any state law claims against these Defendants.

**V.      Conclusion**

For the reasons described above:

**(1)** Mr. Torres's motions for summary judgment [docs. ## 52 & 53] are DENIED without prejudice to renewal.

**(2)** The Police Defendants' motion to dismiss [doc. #50] is GRANTED IN PART and DENIED IN PART.

> **(a)** The Police Defendants' motion is denied with respect to Mr. Torres's claims for false arrest and malicious prosecution to the extent those claims are based upon charges to which Mr. Torres did not plead guilty.

> **(b)** Mr. Torres's claims for conspiracy under Sections 1983 and 1985 are dismissed without prejudice.

**(3)** The State Defendants' motion to dismiss [doc. #51] is GRANTED IN PART and DENIED IN PART.

> **(a)** The following claims are dismissed with prejudice: **(1)** all damages claims against the State Defendants in their official capacities; **(2)** all claims against Defendants McKintosh and Kenworthy relating to their initiation of and participation in child neglect proceedings against Mr. Torres; **(3)** all claims against Defendants

McKintosh and Kenworthy relating to their alleged failure to prevent the molestation of Mr. Torres's child; **(4)** all claims against Defendants Howell and Davis related to child support proceedings against Mr. Torres; **(5)** all claims relating to Mr. Torres's inmate classification; **(6)** all claims against Defendants Savias, John Doe One, and John Doe Two; and **(7)** all claims against Defendant Kinloch.

 **(b)** The following claims are dismissed without prejudice: **(1)** all conspiracy claims against the State Defendants; **(2)** all claims against Defendant Dunbar; **(3)** all claims against Defendant Martin; and **(4)** state-law claims against all State Defendants except Defendants McKintosh and Kenworthy.

 **(c)** The State Defendants' motion to dismiss is denied with respect to claims against Defendants McKintosh and Kenworthy related to the removal of Mr. Torres's children.

**(4)** Mr. Torres may seek leave to file a second amended complaint in accordance with the directions noted above but must do so **by June 26, 2006**.  However, the Court cautions Mr. Torres that he has already had two opportunities to allege a proper claim and has largely failed to do so.  Therefore, in any motion seeking to amend his complaint, Mr. Torres must plead specific facts in accordance with the Court's instructions.  If he fails to do so, the Court may deny him the right to amend.

IT IS SO ORDERED,


/s/ _____Mark R. Kravitz_____
United States District Judge


**Dated at New Haven, Connecticut: May 26, 2006.**