# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EDWARD TORRES, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil No. 3:03cv2227 (MRK) |
| | : | |
| JUDITH HOWELL, et al.[1] | : | |
| | : | |
| Defendants. | : | |

## RULING ON MOTIONS FOR SUMMARY JUDGMENT

Plaintiff, Edward Torres, commenced this civil rights action asserting various claims relating to his arrest and subsequent incarceration. Mr. Torres's claims against two Defendants, Deanna McIntosh ((incorrectly identified as Dianne McKintosh) and Jill Kenworthy, relate to the removal of Mr. Torres's children from a hospital following the arrest of Mr. Torres and the children's mother for risk of injury to a child. Currently pending before the Court are Defendants Kenworthy and McIntosh's Motions for Summary Judgment [docs. ## 73, 76].[2] Despite being given notice of the motions and his obligation to respond to them, Mr. Torres has not opposed the motions. For the reasons that follow, the Court GRANTS Defendants' Motions for Summary Judgment.

---

[1]The named defendants are Judith Howell, Victor Savias, Sergeant DiPrimio, Sergeant Edwards, Officer Robinson, Officer Michael Slavin, Darlene Dumbar, Jill Kenworthy, Deanna McIntosh (incorrectly identified as Dianne McKintosh), William Kenworthy, Days Inn Motel, Richard K. Smith, Bernard Davis, Warden Martin, Dan Shaban and John Does 1 & 2.

[2]The defendants have filed one motion under seal [doc. # 76] and a redacted, unsealed version [doc. # 73].

**I.**

If, as here, the nonmoving party does not respond to a motion for summary judgment, the Court may accept as true the moving party's factual statements. *See* D. Conn. L. Civ. R. 56(a)1 ("All material facts set forth in [the moving party's Rule 56(a)1] statement will be deemed admitted unless controverted . . . ."). Because Mr. Torres has not responded to the Defendants' motions, the Court deems admitted the following facts taken from the Defendants' Local Rule 56(a)1 Statement [doc. # 73-3]. The Court has nevertheless checked the citations in the Defendants' Local Rule 56(a)1 Statement, and the factual allegations are supported by the documentary evidence Defendants have cited.

In the early morning of May 10, 2003, Defendant Michael Slavin, a Waterbury police officer, contacted Connecticut's Department of Children and Families ("DCF") Hotline to report the physical neglect of Mr. Torres's four children. The children were living in an abandoned building infested with cockroaches. There was no food, no running water, and the children were filthy. Defendant Slavin reported that Mr. Torres had been arrested and charged with risk of injury to a minor and that the children's mother would be charged after DCF responded. The children were then taken by ambulance to a local hospital for examination.

Kevin Cranford, the Hotline investigator, went to the hospital to interview Defendant Slavin. He learned from Defendant Slavin that the floor of the apartment where the children were living was covered with feces, that there were so many cockroaches that the walls appeared to be moving, and that the only electricity to the apartment was from an outside source, which created a fire hazard. Defendant Slavin told Mr. Cranford that the children themselves were filthy and were sleeping on

2

dirty mattresses with no bedding.

Mr. Cranford also interviewed the children and their mother. The children were wearing dirty clothes, had matted hair, and smelled of insect spray. Following the interview, the children's mother was arrested and charged with risk of injury to a minor. Mr. Cranford contacted DCF from the hospital and was told to remain there until the Waterbury Regional DCF Office responded.

Later on the morning of May 10, a DCF program supervisor issued a 96-hour hold regarding the children. Connecticut General Statutes § 17a-101g(e) provides that, if a designee of the Commissioner of the Department of Children and Families has probable cause to believe that a child is "in imminent risk of physical harm from the child's surroundings and that immediate removal from such surroundings is necessary to ensure the child's safety," the official shall authorize a DCF employee to remove the child from the surroundings without the parents' consent. Subsection (f) states that such a removal cannot last longer than 96 hours. In this case, the DCF hold was issued for two reasons: (1) both parents had been arrested and there were no family members available to take the children; and (2) the children had been found living in an abandoned building in inhumane conditions.

Once the hold was issued, Defendant McIntosh, a DCF investigations social worker, was sent to the hospital to assume custody of the children and to place them in temporary foster care. When Ms. McIntosh arrived at the hospital, the children's mother already had been arrested. The children were alone with no family members present. Defendant McIntosh observed that the children were physically dirty, wearing dirty clothing, and had an odor. Once they were released from the hospital, Defendant McIntosh placed them in temporary foster care. Later that same day, Mr. Cranford and

the DCF program supervisor sought an order of temporary custody in state court. The Superior

Court issued the order for temporary custody the same day.

Defendant Kenworthy, a social worker assigned to the treatment unit of DCF, rather than the

investigations unit, was not involved in the removal of the children from Mr. Torres's apartment or

in the temporary custody proceedings. The case was not assigned to her until May 18, 2003, after

the Superior Court's order of temporary custody.

**II.**

The summary judgment standard is a familiar one. Summary judgment is appropriate only

when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with

the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "A dispute regarding a

material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the

nonmoving party." *Williams v. Utica College of Syracuse Univ.*, 453 F.3d 112, 116 (2d Cir. 2006)

(internal quotation marks omitted). "The substantive law governing the case will identify those facts

that are material, and 'only disputes over facts that might affect the outcome of the suit under the

governing law will properly preclude the entry of summary judgment.'" *Bouboulis v. Transp.*

*Workers Union of Am.*, 442 F.3d 55, 59 (2d Cir. 2006) (quoting *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 248 (1986)).

The moving party bears the burden of demonstrating that no genuine issue exists as to any

material fact, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986), and the Court must draw

all ambiguities and inferences in favor of Plaintiff, *see Anderson*, 477 U.S. at 255. If the moving

party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials . . . ." Fed. R. Civ. P. 56(e).  Rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*  In short, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586  (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50. Even if the motion is unopposed, however, the Court will not grant summary judgment unless it determined that the moving party is entitled to judgment as a matter of law.  *See Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 242 (2d Cir. 2004).

Where one party is proceeding *pro se*, the court reads the *pro se* party's papers liberally and interprets them to raise the strongest arguments suggested therein.  *See Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).  Despite this liberal interpretation, however, a "bald assertion," unsupported by evidence, cannot overcome a properly supported motion for summary judgment.  *Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

### III.

Mr. Torres alleges that the DCF social workers, Defendants McIntosh and Kenworthy, fabricated evidence, defamed him, and commenced child neglect proceedings without a proper investigation of his family circumstances, all in order to deprive him of his children.  Defendants reply that Ms. Kenworthy was not involved in the removal of Mr. Torres's children and that Ms. McIntosh is protected by qualified immunity.

## A.      Defendant Kenworthy

To prevail on his claim against Defendant Kenworthy, Mr. Torres must demonstrate that she was personally involved in the violation of his constitutionally protected rights.  *See Patterson v. County of Oneida*, 375 F.3d 206, 229 (2d Cir. 2004) ("[A] plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity under § 1983.").  He may do this by providing evidence showing that she was directly involved in the removal proceedings in the manner alleged.

Defendant Kenworthy has provided evidence that she had no contact with Mr. Torres's children until May 18, 2003, after they had been removed from his care and placed in DCF custody by court order.  Mr. Torres has presented no contrary evidence in opposition to the motion to suggest that Defendant Kenworthy was involved in the actual removal of the children on May 10, 2003.  Therefore, the claims against Defendant Kenworthy fail as a matter of law.

## B.      Defendant McIntosh

Defendant McIntosh was involved in the removal of Mr. Torres's children on May 10, but she argues that she is protected by qualified immunity from any claims arising from her participation in the removal of Mr. Torres's children.   The doctrine of qualified immunity "protects public officials from liability for civil damages when one of two conditions is satisfied: '(a) the defendant's action did not violate clearly established law, or (b) it was objectively reasonable for the defendant to believe that his action did not violate such law.'"  *Russo v. City of Bridgeport*, No. 05-4302-cv, 2007 U.S. App. LEXIS 4428, at *40-*41 (2d Cir. 2007) (quoting *Poe v. Leonard*, 282 F.3d 123, 133 (2d Cir. 2002)).  To determine whether qualified immunity is warranted, the Court first must address

the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If the Court finds a violation, it next must determine whether, considering the facts of the case before it, that right was clearly established at the time of the incident. *See id.*

In denying the Defendants' Motion to Dismiss [doc. # 51], the Court determined that, construing all of the allegations of the complaint in Mr. Torres's favor, he had stated a claim against Defendant McIntosh regarding the removal of his children. *See* Ruling and Order [doc. # 68] at 20-22. The Court now must examine the facts of this case as reflected in the admissible evidence presented by the parties to determine, under the standard for summary judgment, whether Defendant McIntosh's actions violated Mr. Torres's rights, and if so, whether a reasonable social worker would have understood that removing the unaccompanied children from the hospital on May 10 would violate Mr. Torres's rights. The Second Circuit has held that social workers cannot remove a child from a parent's custody unless the social worker had a reasonable basis for believing that removal is necessary for the child's well-being. *See Tenenbaum v. Williams*, 193 F.3d 581, 596 (2d Cir. 1999) (holding that social workers cannot remove children without court authorization or consent of the parents absent emergency conditions); *cf. Robison v. Via*, 821 F.2d 913, 921-22 (2d Cir. 1987) (holding that where "a child is immediately threatened with harm or is bereft of adequate care or supervision," sufficient emergency exists for removal of child without court order or parental consent).

Defendant McIntosh has presented undisputed evidence that she was neither involved in the investigation of the Hotline call nor responsible for the issuance of the 96-hour hold. She arrived

at the hospital after the 96-hour hold had been issued, and at the time she arrived at the hospital, both parents had already been arrested and no other family member was present to supervise or provide care for the children. Thus, the children were without adequate care and supervision. In addition, Defendant McIntosh observed the children to be filthy, wearing dirty clothes, and giving off an odor. Mr. Torres has submitted no contrary evidence.

On the basis of the documentary evidence in the record, which is undisputed, the Court concludes that Defendant McIntosh is entitled to qualified immunity on Mr. Torres's claims. First, the Court does not believe that Defendant McIntosh violated Mr. Torres's rights in removing the children from the hospital on May 10. To the contrary, the Court concludes on the basis of the undisputed record that Mr. Torres's children were "bereft of adequate care or supervision," *Robison*, 821 F.2d at 922, and that they needed to be removed from the hospital and placed in temporary foster care in order to provide them with adequate care and supervision. Since the evidence shows that sufficient emergency circumstances existed to justify removal of the children, the Court does not believe that Defendant McIntosh violated any clearly established constitutional rights of Mr. Torres. But even if the Court were wrong in that regard, in the circumstances presented, a reasonable social worker in the same situation as Defendant McIntosh would not have believed that she was violating Mr. Torres's constitutional rights by executing the 96-hour hold and placing the children in temporary foster care. Because Defendant McIntosh's actions in removing the children from the hospital on May 10 were objectively reasonable, she is entitled to the protection of the doctrine of qualified immunity and therefore, summary judgment on Mr. Torres's claims.

**IV.**

For the reasons stated, Defendants Kenworthy's and McIntosh's Motions for Summary Judgment [docs. ## 73, 76] are **GRANTED**. Because Mr. Torres's claims against Defendants DiPrimio, Edwards, Robinson, and Slavin remain in the case, and the deadline for dispositive motions has passed, the Court will issue a separate order setting a schedule for trial and the Joint Trial Memorandum.

IT IS SO ORDERED.

/s/       Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: <u>April 10, 2007</u>.**